IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOE KAHAN, et. al.,
Plaintiffs,

v.

HILTON WORLDWIDE, INC., et. al.,
Defendants.

CIVIL NO. 14-1355 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

This case stems from a slip and fall suffered outside a Starbucks coffee shop located in the exterior area of the Condado Plaza Hilton Hotel. Plaintiff Joe Kahan and his wife Kristen McCaffrey (hereinafter "Plaintiffs") aver that, as they were leaving the Starbucks coffee shop after a rain shower, Kahan slipped and fell on a wet tiled area outside the shop. As a result of the fall, Kahan twisted his knee and was ultimately diagnosed home in California with an ACL tear and a ligament sprain, which will require an expensive surgery and a six (6) to nine (9) months post-surgery rehabilitation period. Plaintiffs, who had come to Puerto Rico to spend some time in Rincón surfing, spent the rest of their vacation sitting poolside at a resort in Fajardo, as Kahan was unable to climb stairs to their Rincón rental property, much less surf. Thus, Plaintiffs allege their trip was completely ruined by the accident and claim damages therefrom. Defendant is Posadas de Puerto Rico Associates, LLC, ("Posadas") which owns and operates the Condado Plaza Hilton Hotel, where the incident occurred.

Both parties have filed motions for summary judgment, inviting this Court to rule in favor of their respective clients. (Docket Nos. 33 and 34). For the reasons explained herein below, both Motions for Summary Judgment are hereby DENIED.

**STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." <u>Cortés-Irizarry v. Corporación Insular</u>, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. <u>Id.</u> Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." <u>Id</u>. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all

reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also, Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " Hernández, 869 F.Supp.2d at 7 (*quoting* Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

**FINDINGS OF FACT**

Based on the parties' submissions[1], the Court makes the following findings of fact:

1. Plaintiff Joe M. Kahan was born in Mexico City, Mexico, and is currently a citizen of the State of California, married to Plaintiff Kristen McCaffrey, with residence, domicile and intention to live in Santa Monica, California. P. Exhibit III, paragraph 1, at page 3; P. Exhibit IV, 4:15; 5:1; 6:7-8.

2. Plaintiff Kristen McCaffrey, Plaintiff Kahan's spouse, was born in Concord, Massachusetts and is currently a citizen of the State of California, with residence, domicile and intention to live in Santa Monica, California. P. Exhibit III, paragraph 1, page 3; P. Exhibit V, 6:18-25; 7:1-13.

3. Plaintiffs Kahan and McCaffrey were married on May 13, 2012. P. Exhibit IV, 6:7-8; P. Exhibit V, 6:22-25.

4. Defendant Posadas owns and operates the Condado Plaza Hilton Hotel. On May 5, 2013, Posadas was in control and was responsible for the upkeep or maintenance of the pathway and tiled stairs in front of Starbucks at the Ocean Tower, on the east side of the Condado Plaza Hilton Hotel, where Plaintiff's slip and fall incident reportedly occurred. P. Exhibit II, paragraphs 5-6, at p. 1; Exhibit VI-A, Request No. 1, at p. 4; P. Exhibit VI-B, Response No. 1, at p. 1.

5. On May 4, 2013, Plaintiffs came to Puerto Rico on a weeklong vacation/surf trip. Upon arrival, they rented a car to travel the next day to the

---

[1] The Court reminds the parties the averments contained in the Complaint are not evidence, they are simply allegations. Therefore, no facts citing to the Complaint as evidence were considered.

town of Rincón, yet because they arrived at night, they stayed in a small hotel in the Condado-San Juan area named *Le Consulat*. P. Exhibit III, paragraph 20, at p. 14; P. Exhibit IV, 15:7-9; P. Exhibit V, 9:1-13.

6. The next morning, May 5, 2013, Plaintiffs decided to take a walk around the Condado Area before leaving for Rincón. P. Exhibit IV, 15:4-5; P. Exhibit V, 9:10-13.

7. Plaintiffs walked towards the Starbucks coffee shop located at the premises of the Condado Plaza Hilton Hotel to grab a cup of coffee. Since it began raining outside, once they reached Starbucks, they decided to stay inside the coffee shop and wait for the shower to pass. P. Exhibit IX, at p. 4; P. Exhibit IV, 15:11-21; P. Exhibit, 10:12-20.[2]

8. The Starbucks coffee shop at the Condado Plaza Hilton is located in the north tower of the hotel, just east of the driveway that leads up the lobby. D. Exhibit 2, ¶2.

9. The Starbucks coffee shop faces Ashford Avenue, and its entrance/exit leads to the exterior, where there is a set of outdoor steps that lead to the sidewalk on the north side of Ashford Avenue. D. Exhibit 2, ¶ 3.

10. While Plaintiffs were still inside Starbucks, it stopped raining. P. Exhibit IV, 15:11-19.

---

[2] The parties spend a great deal of time arguing over whether it was raining lightly or normally, and how much time Plaintiffs spent inside the Starbucks. These facts are not material to establish that the area where Plaintiff fell was wet when he stepped on it, a fact which both parties agree on.

11. As Plaintiffs approached the stairs to get back on the street level, Plaintiff Kahan slipped on or near the tiled stairs, hyper-extending his right knee as he heard it pop, and fell in excruciating pain to the ground, landing awkwardly on his back at the bottom of the stairs. P. Exhibit IV, 16:1-25; 17:21-24; P. Exhibit V, 13:2-14. [3]

12. Otilio Ramos, the hotel's head of security, arrived at the scene some thirty (30) minutes later. P. Exhibit V, 16:1, 14-15.

13. The Condado Plaza Hilton Hotel is responsible for maintaining its common areas, including the area in front of the Starbucks where Plaintiff Kahan's accident occurred. P. Exhibit XI, paragraph 19, at p. 5 P. Exhibit VI-A, Request No. 1, at p. 4; P. Exhibit VI-B, Response No. 1, at p. 1.

14. At the time of the accident, the platform and the tiled stairs were wet. P. Exhibit IV, 16:10-11.

15. When Plaintiff Kahan stepped out of the Starbucks, he noticed it was wet and he knew it was wet. D. Exhibit 1, 62:3-13.

16. In the moments leading up to his fall, Plaintiff Kahan was not paying attention to the way he was walking. D. Exhibit 1, 16:8-9.

17. The area in front of the Starbucks and the steps between the Starbucks and the sidewalk along Ashford Avenue have tiles. The stairs which lead up to the

---

[3] The parties also argue whether Plaintiff Kahan slipped on the first stair or on the landing, as he approached the first stair. For purposes of this motion, the Court will simply say that he slipped on or near the first stair, as it is immaterial for summary judgment whether he slipped on the landing or on the stair. Both the landing and the stair were wet and both had the same tile, which both parties agree on.

   Starbucks did not have adhesive anti-skid strips in place. P. Exhibit III, paragraph 2, at p. 4; D. Exhibit 2, Exhibit A.

18. The steps between the Starbucks and the street level where Plaintiff Kahan reportedly fell have a handrail. D. Exhibit 2, ¶ 3, 4 and 5.

19. When Plaintiff Kahan fell, he was not reaching or holding the handrail on the steps. D. Exhibit 1, 18:14-25; 19:1-2.

20. When Plaintiff Kahan fell, he was not holding anything in his hands that would have prevented him from reaching or holding the handrail on the steps. D. Exhibit 1, 19:16 -18.

21. When Plaintiff Kahan slipped and fell, he was wearing flip-flops which were most likely made of plastic. D. Exhibit 1, 19:19-25; 20:1-5.

22. The tiles installed in the area object of this fall are "Series Kronos" tiles. D. Exhibit 2, ¶ 6.

23. As per the technical characteristics provided by the manufacturer, the "Series Kronos" tiles installed in the area are marketed as tiles intended for outdoor or exterior use. D. Exhibit 2, ¶ 6, and Exhibit B thereto.

24. Posadas admits that "it is general knowledge that most tile surfaces, when wet, offer less friction that a dry tile surface" and that therefore "the Condado Plaza knew, as did Plaintiffs, that the tiled stairs in front of Starbucks at the Ocean Tower, where it was reported Plaintiff Kahan had fallen, offers less friction when wet,

compared to when it is dry." P. Exhibit VI-A, Request No. 6, at p. 4; and P. Exhibit VI-B, Response No. 6, at pp.1-2.

25. There are other stairs on their premises with the same tiles as the area where Plaintiff slipped, and are located on the same street level and side of the Ocean Tower where Plaintiff's accident occurred. These other stairs do have anti-skid adhesive tape in place. P. Exhibit VI-A, Requests Nos. 7 & 8, at pp. 4-5; P. Exhibit VI-B, Responses Nos. 7 & 8, at p. 2.

26. On May 5, 2013, Posadas had no written Standard Operating Procedure in effect for the prevention of slip, trips and falls of visitors at its premises, or for the maintenance or upkeep of the Condado Plaza Hilton Hotel's tiled floors where Plaintiff's incident reportedly occurred. P. Exhibit VI-A, Requests Nos. 3 & 4, at p. 4; P. Exhibit VI-B, Responses Nos. 3 & 4, at p. 2.

27. On May 5, 2013, Posadas had no training manual or handbook in effect for its employees or housekeeping department on how to clean, dry or maintain the hotel's tiled floors. P. Exhibit VI-A, Request No. 5, at p. 4; P. Exhibit VI-B, Response No. 5, at p. 2.

28. No employee or agent of Posadas witnessed the occurrence of Plaintiff's slip and fall. P. Exhibit VI-A, Requests Nos. 10 & 11, at p. 5; P. Exhibit VI-B, Responses Nos. 10 & 11, at p. 2.

29. Plaintiffs reported Plaintiff Kahan's incident to Otilio Ramos on May 5, 2013, at 11:45 a.m. Plaintiff Kahan's Witness Statement was completed at 12:25 p.m. P.

Exhibit VI-A, Requests Nos.13-15, at p. 5; P. Exhibit VI-B, Responses Nos. 13-15, at p. 2.

30. After filing an incident report at the Condado Plaza Hotel with Otilio Ramos, Plaintiffs went to the Hoare Municipal Hospital, where x-rays taken at the Emergency Room confirmed Plaintiff Kahan had not fractured any bones. P. Exhibit III, paragraph 7, at p. 7 and paragraph 11, at p. 9; P. Exhibit IV, 23:11-24; P. Exhibit V, 16:22-24; 23:1-6.

31. At the Hospital, Plaintiff Kahan was given injections, a painkiller, an anti-inflammatory, a prescription and a brace, and told to follow-up on his injury with his primary physician. P. Exhibit III, paragraph 7, at p. 7 and paragraph 11, at p. 9; D. Exhibit IV, 23:23-24; 24:1-14.

32. When released from the emergency room, Plaintiffs returned to their hotel to pick up their car and headed to Rincón as originally planned. The condo they had rented at Casa de Rincón, however, was three (3) stories high and due to the pain Plaintiff still felt in his right knee, he could not climb the stairs to get to their room. P. Exhibit III, paragraph 20, at p. 14; P. Exhibit IV, 24:15; 25:16; P. Exhibit V, 17:21; 19:16-25.

33. Plaintiffs were forced to cancel the remainder of their reservation at Casa de Rincón and relocate to a Wyndham Hotel in the Fajardo Area, spending more money on this alternate lodging option to accommodate Plaintiff Kahan's pain and injuries. Plaintiff Kahan spent the rest of his trip with a knee brace and under pain

medications, unable to enjoy the vacation with his wife to the fullest, as originally planned. P. Exhibit III, paragraph 20, at p. 14; P. Exhibit IV, 24:15-25; 25: 1-23; P. Exhibit V, 20:1-23.

34. After six (6) days of excruciating pain and limited mobility, Plaintiffs finally flew back to Los Angeles, California, where Plaintiff Kahan visited a chiropractor who suggested he get an MRI of his right knee. After three (3) physical therapy sessions, Plaintiff Joe Kahan got an MRI. All this was paid out of pocket. P. Exhibit III, paragraph 11, at p. 9; P. Exhibit IV, 29:5-7; 30:23-25; 31:1-4; P. Exhibit X, at pp. 2 & 5.

35. The MRI performed on May 15, 2013 of Plaintiff Kahan's right knee revealed he had suffered a "complete ACL tear with prominent posterior tibial bone bruise and a moderate joint effusion. Medial collateral ligament sprain [wa]s present as well." P. Exhibit XIV, at p. 2 (Section titled "Impression").

36. Plaintiff Kahan also consulted Dr. Babak Samimi, an Orthopedic Surgeon and his treating physician, who after examining the Plaintiff and the MRI, concluded the former had: "(1) a right knee anterior cruciate ligament tear [ACL Tear], and (2) a right knee medial meniscus tear." Considering Plaintiff Kahan's age and activity level, surgery was recommended as it would allow Plaintiff to return to contact sports and more strenuous activities, and would prevent further pain and instability in his knee. P. Exhibit IV, 39:9-25; 10-1-3; P. Exhibit XV, paragraphs 1 & 3, at p. 4.

37. The approximate cost of surgery of Plaintiff Kahan's injury is approximately Sixty Thousand Dollars ($60,000.00), with a six (6) to nine (9) month post-operative rehabilitation period. Plaintiff plans to undergo surgery with Dr. Babak Samimi once he figures out how to finance the same. P. Exhibit XV, paragraph 3, at p. 4 (Section on "Treatment Recommendations"); P. Exhibit IV, 44:1-14; 56:24-25; 57:22-25; 58:1-7.

38. Before the accident, Plaintiff Kahan had an active lifestyle. However, the injury sustained affects and restricts his performance in every activity that requires joint movement, such as surfing and hiking. The injuries also restrict his day-to-day activities such as walking, sitting for long periods of time and even sleeping. P. Exhibit III, paragraphs 6 & 15, at pp. 6 & 12; D. Exhibit IV, 9:17-25; 12:10-17; 48:2-49.

39. Plaintiff Kahan also initiated psychotherapy with Dr. Stacie Cox in July, 2013, to overcome, among other issues, his fears of participating in certain sports or activities due to his injury. P. Exhibit III, paragraph 14, at p. 11; P. Exhibit IV, 49:10-22; 51:1-21; P. Exhibit XVI, paragraph 1, at p. 1.

40. The intense pain caused by the injury, the limited mobility of the right knee, and the pile-up of medical expenses have unnecessarily stressed Plaintiffs' marriage. They sometimes argue and no longer enjoy certain physical activities together like they use to prior to the incident. P. Exhibit III, paragraph 6, at p. 6; P. Exhibit IV, 54:24-25; 55:1-25.

41. Plaintiff Kristen McCaffrey was with her husband at the moment he slipped and fell, witnessing the accident and his emotional distress.  P. Exhibit III, paragraphs 4 & 6, at pp. 5-6; P. Exhibit V, 8:25; 9:1-2; 11:20-25; 12:1-5; 13:2-14; 15:4-16.

42. Plaintiff McCaffery's vacation in Puerto Rico was likewise ruined as the accident occurred on the first day of their trip. Furthermore, she no longer enjoys an active lifestyle in the company of her husband due to the injury he sustained. P. Exhibit III, paragraphs 4 & 6, at pp. 5-6; P. Exhibit V, 19:16- 25; 22:17-23.

**LEGAL ANALYSIS**

It is black letter law that a Court sitting in diversity, as here, must apply Puerto Rico law to all substantive matters and is "bound by the teachings of the state's highest court." N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001). Under Puerto Rico law, "a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage done." P.R. Laws Ann., tit. 31, § 5141.  In order to establish liability due to negligence, a plaintiff must show that the defendant: (1) owed a duty to the plaintiff; (2) the defendant breached that duty, and (3) that the plaintiff suffered damages, and that those damages were caused by the breach of duty (i.e., proximate cause).  Calderón-Ortega v. U.S., 753 F.3d 250 (1st Cir. 2014).

A defendant's duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances.  Quiles v. United States, 877 F.Supp. 57 (D.P.R. 1995) (*quoting* Oliveros v. Abreu, 101 P.R.R. 293 (1973)). It has been established that " . . . foreseeability is a central issue in these cases, as it is an element of

both breach of duty and proximate cause." Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007); see also Woods–Leber v. Hyatt Hotels of P.R., 951 F.Supp. 1028, 1036 (D.P.R. 1996), aff'd, 124 F.3d 47 (1st Cir.1997) (stating that foreseeability is a component of breach of duty and proximate cause). Foreseeability is a component of the breach [element] because "a defendant only breaches his duty if he acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." Vázquez-Filippetti, 504 F.3d at 49.

Therefore, Plaintiffs must show the foreseeable risks created by Defendant's acts or omissions. Once Plaintiffs have demonstrated that Defendant was negligent (and thus, breached the duty of care), they must then demonstrate that Defendant's negligence actually caused them injuries and Defendant could have reasonably foreseen that the injuries would result from its acts or omissions. Marshall v. Pérez-Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) (citing Jiménez v. Pelegrina, 112 P.R. Dec. 881, 885 (1982)).

Here, the first element is readily met: one who operates a business undeniably owes a duty of reasonable care to business invitees. See Cotto v. Consol. Mut. Ins. Co., 16 P.R. Offic. Trans. 786, 793, 116 D.P.R. 644 (P.R. 1985); see also, Torres v. Kmart, 233 F.Supp.2d 273, 278 (D.P.R. 2002) ("the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage").

The main analysis in this case is centered on the next element, breach of that duty: a business invitee who alleges such a breach must show "that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care)."

Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 124 F.3d 47, 50-51 (1st Cir. 1997); see also Coyne v. Taber Partners I, 53 F.3d 454, 459-60 (1st Cir. 1995). It follows, therefore, that "[i]n a premises liability case, fault ordinarily depends on knowledge." Nieves-Romero v. U.S., 715 F.3d. 375, 379 (1st Cir. 2013); see also Woods-Leber, 124 F.3d at 50 n. 5 (noting that "Puerto Rico law ordinarily requires a demonstration of the owner's or occupier's actual or constructive knowledge of the harm-causing condition"); and Mas v. United States, 784 F. Supp. 945, 948 (D.P.R. 1992) *aff'd*, 984 F.2d 527 (1st Cir. 1993) (*quoting* Goose v. Hilton Hotels Int'l, Inc., 79 D.P.R. 523 (1956)) ("there can be no liability for harm resulting from dangerous conditions of which [the business owner] does not know, and which a reasonable inspection would not have discovered, or from conditions from which no unreasonable risk was to be anticipated").

Cases premised on the existence of a dangerous condition often arise from a "slip-and-fall," caused by a wet or slippery floor, as in the present case, and posit that that the business owner was negligent in permitting the condition to remain because it is foreseeable that a wet floor is likely to cause injury. "Similar claims include stairway railings in disrepair, burned-out exterior or security lights in a dangerous area, and unsturdy or unstable floors. In any of these circumstances, the property itself, if it were in pristine condition, would be safe, but some act or omission by the owner has created dangers or risks to the property's visitors." Vázquez-Filippetti, 504 F.3d at 50. Normally, then, the issue is whether defendant had sufficient time to realize that there was

dangerous liquid on the floor or whether it used due diligence or care to carry out reasonable inspections of the premises for hazards.

Turning to the instant case, the rain that fell ~~fall~~ wet the area in question, which had no roof as it was located outside the hotel in the open air, was exposed to rainwater and the elements on a regular basis, and got wet every time it rained in the Condado area. There can be no doubt that Defendant knew of this condition. The issue then, is whether Defendant acted reasonably in leaving such an exposed area, the front on the entrance to the coffee shop, where patrons walk in and out of the shop, without some type of slip prevention mechanism. This is the crux of Plaintiffs' argument, as they aver the area, both the platform and the stairs, remained wet after the rain shower because the hotel failed to dry it. There were no cautionary signs in place, nor did the steps have any anti-skid adhesive tape on, furthering the dangerous condition in the area, and in direct contrast to the nearby steps close to where Plaintiff Kahan fell, which had the same tiles, and did have anti-skid adhesive tape placed on them. Plaintiffs argue that t~~T~~his, coupled with the fact that "it is foreseeable that a wet floor is likely to cause injury", ~~Plaintiffs argue,~~ is determinative evidence that renders Defendant liable for this accident.

Defendant says it cannot be faulted. Defendant posits it had no duty to warn precisely because Plaintiffs knew the area was wet, and indeed, Plaintiffs admit they went into the coffee shop because it was raining. Furthermore, Defendant avers Plaintiffs lack evidence that the tile was inherently dangerous without the anti-skid strips, and in its

defense, points to the manufacturer's declaration of intended use for the tile, which shows that it was intended for both indoor and outdoor use.

In the end, both parties fail. A genuine issue of material fact exists if a reasonable jury could find for either party on the contested matter. Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). Here, the Court finds that a reasonable jury could find Plaintiff Kahan's accident was foreseeable to him simply because it is common knowledge that a wet area offers less resistance or traction to a person walking on it (indeed, both parties urge the Court to accept this tidbit of wisdom as judicial knowledge) and he should have been more careful. By the same token, the Court also determines that a jury could also find that this accident was foreseeable to Defendant Posadas simply because it had placed anti-skid strips on precisely the same tile not far from where Plaintiff Kahan fell, thus leading to the reasonable inference that it foresaw that someone could slip on the surface.

In addition to this, other questions of fact remain unanswered, to wit: Should Kahan have been more watchful, knowing the area was wet? How watchful was he, as he said he was "not paying attention to the way he was walking"[4] before he fell? Was it reasonable for him to have held the handrail as he stepped down? Was it reasonable for Defendant Posadas to have dried the area, seeing it was wet or was it reasonable for the tile to have dried on its own because it was outdoors? In other words, did Defendant Posadas act as a reasonably prudent person under the circumstances presented in this

---

[4] See D. Exhibit 1, p. 16:8-9.

case? How much time elapsed between the time it stopped raining and Plaintiffs left the Starbucks? Would Defendant Posadas have dried the area in time to prevent this accident?

Clearly these are all questions proper for a jury, and because foreseeability is a central issue in premises liability claims, as it is an element of both breach of duty and proximate cause[5], the resolution of this issue could go either way. "Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions. In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question is one for the jury." Marshall, 828 F.2d at 849 (*quoting* Springer v. Seamen, 821 F.2d 871, 876 (1st Cir. 1987) and *Prosser & Keeton on Torts* 320–21 (W. Keeton 5th ed. 1984); see also Pabón Escabí v. Axtmayer, 90 P.R.R. 20, 25 (1964) (noting whether a defendant is liable under a premises liability claim depends on the facts and circumstances of each case). Therefore, the Court cannot enter summary judgment for either party.

In addition to the foreseeability issue, the Court finds there are additional material factual controversies that preclude summary disposition of this case. For instance, whether signs warning of the wet condition were posted in the area, and how the area where the non-skid adhesive was placed differed, if at all, from the area where Plaintiff fell are very relevant to this controversy. Equally important, issues that are properly presented through expert testimony, such as the standard for hand rails and the friction

---

[5] See Vázquez-Filippetti, 504 F.3d at 49.

coefficient for this particular tile, also prevent summary disposition of these claims. These all evidentiary and credibility matters that only a jury can evaluate and answer. Thus, it is the jury who must determine whether both parties' actions were reasonable and foreseeable in light of the evidence that will be presented to them.

For all the aforementioned reasons, both Motions for Summary Judgment (Docket Nos. 33 and 34) are DENIED.

## CONCLUSION

In view of the foregoing, the Court hereby DENIES both Motions for Summary Judgment.[6] (Docket Nos. 33 and 34).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 2nd day of December, 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE

---

[6] In light of the instant ruling, the Court strongly encourages the parties to carry out settlement negotiations in this case. The controversies are simple and should be easy to ascertain and resolve. This would serve to conserve scarce judicial time and resources. The parties are granted thirty (30) days to conduct further settlement negotiations and jointly inform the Court of the outcome. If no settlement is reached, the Pre-Trial/Settlement Conference and the Jury Trial will be promptly scheduled.